WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

Robert J Platek,

    Plaintiff,

v.

Commissioner of Social Security Administration,

    Defendant.

No. CV-20-01161-PHX-MTL

**ORDER**

At issue is the denial of Plaintiff Robert J. Platek's Application for Disability Insurance Benefits by the Social Security Administration ("SSA") under the Social Security Act. Plaintiff filed a Complaint (Doc. 1) with this Court seeking judicial review of that denial, and the Court now addresses Plaintiff's Opening Brief (Doc. 15, "Pl. Br."), Defendant SSA Commissioner's Response Brief (Doc. 19, "Def. Br."), and Plaintiff's Reply Brief (Doc. 20, "Reply"). The Court has reviewed the briefs and Administrative Record (Doc. 14, "R.") and now reverses and remands for a new hearing.

**I.  BACKGROUND**

Plaintiff filed an Application for Disability Insurance benefits on November 30, 2016, for a period of disability beginning on September 1, 2015. (R. at 198.) His claim was denied initially on January 24, 2017, and upon reconsideration on May 4, 2017. (R. at 85–109.) Plaintiff appeared before the ALJ for a hearing regarding his claim on April 25, 2019, which the ALJ denied on May 9, 2019. (R. at 29, 45.) On May 13, 2020, the Appeals Council denied Plaintiff's Request for Review and adopted the ALJ's decision as the

agency's final decision. (R. at 1–4.)

The Court will discuss the pertinent medical evidence in addressing the issues raised by the parties. Upon considering the medical records and opinions, the ALJ evaluated Plaintiff's disability based on the following severe impairments: degenerative disc disease of the cervical spine with right-sided cervical radiculopathy, and degenerative disc disease of the lumbar spine. (R. at 18.) The ALJ evaluated the medical evidence and testimony and concluded that Plaintiff was not disabled from the alleged disability onset-date through the date of the decision. (R. at 28.) The ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (R. at 18.) Next, the ALJ determined Plaintiff's residual functional capacity ("RFC"):

> [Plaintiff] has the [RFC] to perform sedentary work as defined in 20 CFR 404.1567(a) except with the capacity to lift and carry less than 10 pounds frequently and 10 pounds occasionally, stand and/or walk 4 hours total in an 8-hour day, sit for 6-8 hours total in an 8-hour day, with left eye blindness since age 15, no more than occasional climbing, balancing, stooping, kneeling, crouching, and crawling, no more than frequent reaching and handling with the right upper extremity, no limitations in the left upper extremity, and limitations in working around heights, moving machinery, extremes of temperature, chemicals, dusts, fumes and gases, and excessive noise.

(R. at 19.) Based on Plaintiff's RFC, the ALJ found that Plaintiff was able to perform past relevant work as a Director of Human Resources. (R. at 27.) Accordingly, the ALJ determined that Plaintiff was not disabled during the relevant period. (R. at 29.)

## II. LEGAL STANDARD

In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The Court may set aside the Commissioner's disability determination only if it is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, but less than a preponderance; it is relevant evidence that a reasonable person

might accept as adequate to support a conclusion considering the record as a whole. *Id.* To determine whether substantial evidence supports a decision, the Court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* Generally, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

To determine whether a claimant is disabled, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled, and the inquiry ends. *Id*. At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. *Id*. § 404.1520(a)(4)(ii). If not, the claimant is not disabled, and the inquiry ends. *Id*. At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. *Id.* § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. If not, the ALJ proceeds to step four. *Id*. At step four, the ALJ assesses the claimant's RFC and determines whether the claimant is still capable of performing past relevant work. *Id.* § 404.1520(a)(4)(iv). If so, the claimant is not disabled, and the inquiry ends. *Id*. If not, the ALJ proceeds to the fifth and final step, where the ALJ determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. *Id.* § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id*. If not, the claimant is disabled. *Id*.

### III. DISCUSSION

Plaintiff raises five arguments. First, Plaintiff argues that the ALJ erred by failing to explain why his spinal condition did not fulfill the requirements of Listing 1.04. (Pl. Br. at 8–9.) Second, Plaintiff contends the ALJ improperly rejected treating physician,

Dr. Sham Vengurlekar's, medical opinion. (Pl. Br. at 10–14.) Third, Plaintiff argues the ALJ erred in rejecting his symptom testimony. (Pl. Br. at 14–17.) Fourth, Plaintiff argues the ALJ improperly rejected lay witness testimony. (Pl. Br. at 17–19.) Last, Plaintiff contends the ALJ erred in presenting hypotheticals to a vocational expert ("VE") that did not include the limitations described in Dr. Vengurlekar's opinion, Plaintiff's symptom testimony, and lay witness testimony. (Pl. Br. at 19–20.) The Court will address each argument in turn.

### A. Plaintiff's Impairments under Listing 1.04

A claimant is presumptively disabled if his or her medical impairment is equivalent to a listed impairment in Appendix I. *See Marcia v. Sullivan*, 900 F.2d 172, 174–75 (9th Cir. 1990). In relevant part, Listing 1.04 requires a finding of disability if a claimant (1) has a disorder of the spine, such as "spinal stenosis" or "degenerative disc disease," (2) which results in the "compromise of a nerve root . . . or the spinal cord," and (2) there is "[e]vidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss . . . accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test." 20 C.F.R. 404, Subpt. P, App. 1, Listing 1.04.

The parties agree that the ALJ erred by failing to explain why Plaintiff's spinal impairments did not fulfill Listing 1.04's requirements. (Pl. Br. at 8–9; Def. Br. at 5.) But the parties disagree whether the record conclusively establishes that the requirements in Listing 1.04 are satisfied. (*Id.*) Plaintiff asserts that an MRI and Dr. Vengurlekar's treatment records show that Plaintiff has spinal stenosis resulting in the compromise of the L5 nerve root such that Listing 1.04's requirements are met. (Pl. Br. at 8–9; R. at 401, 411, 413.) Defendant, on the other hand, maintains that the evidence in the record is inconclusive because the medical opinions differ as to whether Plaintiff's condition satisfies Listing 1.04. (Def. Br. at 7, 10; R. at 91, 103.)

Having reviewed the record and the ALJ's decision, the Court agrees with the parties that the ALJ failed to sufficiently discuss why Plaintiff's spinal impairments did not

fulfill Listing 1.04's requirements. The ALJ merely wrote that Plaintiff's impairments "are not attended with the specific clinical signs and diagnostic findings necessary to meet or equal the requirements set forth in any section of the Listing of Impairment." (R. at 18.) This boilerplate finding "'is insufficient to support a conclusion that a claimant's impairment does not' meet or equal a listed impairment." *Jennifer B. v. Berryhill*, No. 3:18-CV-05046, 2018 WL 6178220, at *2 (W.D. Wash. Nov. 27, 2018) (quoting *Lewis*, 236 F.3d at 512). "An ALJ must make specific findings regarding why a plaintiff does not meet all the listing requirements." *Id.* The ALJ did not do so here. Remand is therefore warranted. The issue of whether the proper remedy is an award of benefits or a remand for further proceedings is discussed in Part III.F., *infra*.

### B. Treating Physician Opinion

Plaintiff next challenges the ALJ's decision to assign partial weight to the opinion of Dr. Vengurlekar, Plaintiff's treating physician. (Pl. Br. at 10–14.) Defendant responds, arguing that the ALJ properly provided specific and legitimate reasons supported by substantial evidence for rejecting the opinion of Dr. Vengurlekar. (Def. Br. at 12–14.) The Court agrees with Defendant.

While "[t]he ALJ must consider all medical opinion evidence," there is a hierarchy among the sources of medical opinions. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). Those who have treated a claimant are treating physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who did not treat the claimant." *Id.* This is so because treating physicians have the advantage of in-person interaction and typically a longer history of treatment than a claimant's other doctors, and their "subjective judgments . . . are important, and properly play a part in their medical evaluations." *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988). Generally, an ALJ "may only reject a treating or examining physician's uncontradicted medical opinion based on 'clear and convincing reasons.'" *Carmickle v. Comm'r of Soc. Sec.*, 533 F.3d 1155, 1164 (9th Cir. 2008) (citing *Lester*, 81 F.3d at 830–31). "Where such an opinion is contradicted, however, it may be

rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Id.* An ALJ meets this standard by "setting out a detailed and thorough summary of the facts and conflicting medical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (quotations omitted).

In this case, the ALJ assigned limited weight to Dr. Vengurlekar's opinion because it was "not fully supported" by the record and "reflect[ed] internally inconsistent findings, and findings inconsistent with the weight of the medical record." (R. at 25, 525–36, 661–64.) As support, the ALJ first found that Dr. Vengurlekar made inconsistent statements as to Plaintiff's ability to lift weight. Specifically, the ALJ determined that Dr. Vengurlekar's opinion that Plaintiff could not perform work or lift any weight was inconsistent with his treatment notes, which indicate that Plaintiff could lift five to seven pounds, and Plaintiff's own testimony that he could lift approximately five pounds. (R. at 25, 63, 417, 528–29, 531.) Second, the ALJ found Dr. Vengurlekar's opinion as to Plaintiff's mental limitations inconsistent with treatment records and Plaintiff's testimony. (R. at 25.) In particular, the ALJ noted that Plaintiff alleged no mental limitations (R. at 25, 67, 532), and Dr. Vengurlekar's records did not document abnormal mental function or indicate that Plaintiff struggled to maintain relationships. (R. at 412–13, 419, 421, 458, 489.) Third, the ALJ took issue with Dr. Vengurlekar's opinion regarding the onset date of Plaintiff's pain. (R. at 25.) The ALJ noted that Dr. Vengurlekar's treatment records explain that Plaintiff's pain arose from injuries sustained in a motor vehicle accident in 2006, and Dr. Vengurlekar opined that Plaintiff could not have worked from 2008 to 2017. (R. at 201–02, 532.) Plaintiff's alleged period of disability, however, begins on September 1, 2015. (R. at 26, 526.) And Plaintiff testified that his back did not affect his ability to work until 2015. (R. at 72.) Last, the ALJ emphasized that, even though Dr. Vengurlekar recommended Plaintiff consult a surgeon for spinal pain, he opined there was a high chance the surgery would fail. (R. at 26.) When Plaintiff met with the surgeon, the surgeon recommended a decompression and fusion procedure. (R. at 26, 653–57.)

Considering the foregoing, the Court concludes that the ALJ's decision to assign limited weight to Dr. Vengurlekar's opinion is supported by substantial evidence. *See Carmickle*, 533 F.3d at 1164. Specifically, the ALJ "set[] out a detailed and thorough summary of the facts and conflicting medical evidence, stat[ed] his interpretation thereof, and ma[de] findings." *Magallanes*, 881 F.2d at 751. The Court therefore rejects Plaintiff's argument that the ALJ improperly discredited Dr. Vengurlekar's opinion.

### C. Plaintiff's Symptom Testimony

Plaintiff next argues that the ALJ erred in rejecting his symptom testimony. (Pl. Br. at 14–17.) Defendant disagrees, arguing "the ALJ provided adequate reasons for finding Plaintiff's testimony not fully supported by the record." (Def. Br. at 16.) For the reasons that follow, the Court agrees with Plaintiff.

To evaluate a claimant's testimony regarding pain and symptoms, an ALJ performs a two-step analysis. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014). First, the ALJ evaluates whether the claimant has presented objective medical evidence of an impairment "which could reasonably be expected to produce the pain or symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035–36 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc) (internal quotation marks omitted)). If the claimant presents such evidence, "the ALJ can reject the claimant's testimony about the severity of [his] symptoms only by offering specific, clear and convincing reasons for doing so." *Garrison*, 759 F.3d at 1014–15 (citing *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996)). This standard is the most demanding in Social Security cases. *Id.* at 1015.

In this case, the ALJ concluded that, although "[Plaintiff's] medically determinable impairments could reasonably be expected to cause some of the alleged symptoms," his "statements concerning the alleged intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (R. at 20–21.) As support, the ALJ cited inconsistencies in Plaintiff's symptom testimony with his activities of daily living, Plaintiff's past work, Plaintiff's purported noncompliance with medical advice, and Plaintiff's use of over-the-counter medication in

lieu of prescribed medication. (R. at 21.) The Court evaluates each reason in turn.

The ALJ first rejected Plaintiff's symptom testimony based on inconsistencies with his daily activities. Although Social Security regulations permit an ALJ to consider a claimant's daily activities when assessing the intensity and persistence of the claimant's subjective symptoms, *see* 20 C.F.R. § 404.1529(c)(3)(i), the Ninth Circuit has "repeatedly warned that ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain . . . ." *Garrison*, 759 F.3d at 1016. Indeed, a "disability claimant[] should not be penalized for attempting to lead [a] normal [life] in the face of [his] limitations." *Id.* In this case, the ALJ found that Plaintiff maintains his own personal hygiene and grooming, prepares meals, performs light housework, works on a computer, visits with friends, drives a car, and ambulates without assistance, acknowledging that Plaintiff occasionally uses a walker. (R. at 21, 52, 76, 476–77.) Plaintiff argues these minor activities of daily living do not show inconsistency with his disability. (Pl. Br. at 15–16.) The Court agrees. When "a claimant is able to spend a *substantial part* of his day engaged in pursuits involving the performance of physical functions that *are transferable to a work setting*, a specific finding as to this fact may be sufficient to discredit an allegation of disabling excess pain." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) (emphasis added). But that is not the case here. The ALJ did not provide sufficient evidence to establish that Plaintiff's activities of daily living contradict his symptom testimony. *See Garrison*, 759 F.3d at 1016 (noting differences between activities of daily living and activities performed for a full-time job, including flexibility of timing, ability to receive help from others, and being held to a standard of performance). The ALJ did not cite any evidence that Plaintiff performs the described activities for more than brief periods of time. And there is no indication that the described activities establish Plaintiff's ability to sustain the activity required in a work setting. Accordingly, the supposed inconsistencies between Plaintiff's daily activities and his symptom testimony do not satisfy the requirement of a clear, convincing, and specific reason to discredit Plaintiff's testimony regarding pain-related impairments.

The ALJ's second proffered reason fares no better. The ALJ mischaracterized Plaintiff's reason for leaving his last job. The ALJ stated: "[Plaintiff] testified . . . that the reason he stopped working was because the company he worked for . . . was moving to North Carolina and not specifically because of his medical condition." (R. at 21.) The hearing transcript, however, quotes Plaintiff as follows: "Well, it wasn't that I didn't want to go. It was just I could no longer do the things that they required me to do. It was just too much stress on my body. It wasn't so much the relocation part. It was just the job, the requirements." (R. at 57.) The ALJ also found that, even though Plaintiff had not performed substantial gainful activity since the alleged onset date, his act of applying for another job demonstrated he had the ability to perform work. (R. at 21.) But Plaintiff testified that he was not hired because the potential employer could not accommodate the "flexible schedule" his back condition demanded. (R. at 58.) Therefore, though the Court is mindful that an ALJ may consider a claimant's prior work record when assessing symptom testimony, *see* 20 C.F.R. § 404.1529(c)(3)(vii), the ALJ in this case ignored evidence suggesting that Plaintiff stopped working due to his physical condition and did not get the job he applied for because the employer could not accommodate his medical needs. Accordingly, Plaintiff's prior work does not satisfy the requirement of a clear, convincing, and specific reason to discredit his testimony regarding pain-related impairments.

Third, the parties agree, and the Court concludes, that the ALJ's reliance on Plaintiff's decision to not go forward with surgery does not constitute a clear, convincing, and specific reason to discredit Plaintiff's symptom testimony. (Def. Br. at 16 n.4; R. at 21.) Last, the Court assesses the ALJ's reliance on Plaintiff's use of over-the-counter medications. The Social Security regulations allow an ALJ to consider the type, dosage, effectiveness, and side effects of medication to alleviate pain. S*ee* 20 C.F.R. § 404.1529(c)(3)(iv). And the Ninth Circuit has noted that "evidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment." *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007). But the record in this case does not reflect conservative treatment. Instead, Plaintiff's condition requires, "on a

consistent basis, treatment with Schedule II narcotic medications and muscle relaxants." (R. at 662.) And both Plaintiff's testimony and his treatment records reflect that Plaintiff suffered side effects, including dizziness, grogginess, and difficulty concentrating, from the prescribed medication. (R. at 70, 76, 662.) Accordingly, the Court concludes that the ALJ did not provide specific, clear, and convincing reasons supported by substantial evidence in rejecting Plaintiff's symptom testimony.

### D. Lay Witness Testimony

Plaintiff contends the ALJ erred in rejecting the lay witness testimony of Plaintiff's daughter, wife, and mother-in-law. (Pl. Br. at 17–19.) Defendant responds, arguing the ALJ properly discounted this testimony because "the statements mirrored Plaintiff's own subjective testimony regarding his symptoms." (Def. Br. at 16.)

"Lay testimony as to a claimant's symptoms or how an impairment affects the claimant's ability to work is competent evidence that the ALJ must take into account." *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012), *superseded by regulation on other grounds*. Thus, to discount lay witness testimony, an ALJ must give reasons that are germane to the witness. *Id.* (quoting *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993)). The ALJ need not, however, discuss every witness's testimony on an individualized, witness-by-witness basis. *Id.*

Here, the ALJ assigned "limited weight" to the testimony of Plaintiff's daughter, wife, and mother-in-law because their testimony was cumulative of Plaintiff's allegations and the witnesses did not qualify as "acceptable medical source(s)." (R. at 22.) Although it is true that the lay witnesses' testimony mirrored Plaintiff's own testimony, the ALJ failed to give legally sufficient reasons for rejecting Plaintiff's symptom testimony. *See supra* Part III.C. Thus, because "the ALJ had not validly rejected [Plaintiff's] excess pain testimony, the lay witness[es'] corroborative testimony (if credited by the ALJ) [could] alter the ALJ's disability decision." *See Molina*, 674 F.3d at 1116; *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006) ("By failing to properly account for the testimony of [a claimant] and his son, the ALJ erred in assessing the record testimony

offered in support of [the claimant's] disability claim."). Moreover, even though the lay witness opinions are not medical source opinions, the ALJ must still provide germane reasons for rejecting them. *Molina*, 674 F.3d at 1114; *see also Lewis*, 236 F.3d at 511 ("Lay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account . . . ."). Simply stating that the lay witness opinions are not medical source opinions is not a germane reason. Accordingly, the Court concludes that the ALJ erred by failing to cite a germane reason for rejecting the lay witness testimony in this case.

### E. Vocational Expert

Plaintiff argues the ALJ erred in providing the correct limitations in the hypotheticals presented to the VE at the hearing. (Pl. Br. at 19–20.) Specifically, Plaintiff contends that, "in posing his hypothetical questions to the vocational expert, the ALJ omitted [Plaintiff's] credible allegations, the limitations described by the three lay witnesses, and the limitations assessed by [Plaintiff's] treating doctor, Dr. Vengurlekar." (Pl. Br. at 20.) Accordingly, Plaintiff argues the VE's testimony has no evidentiary value because of the ALJ's failure to present all limitations in the hypotheticals. (*Id.*) Because the ALJ failed to give legally sufficient reasons for rejecting Plaintiff's symptom testimony and the lay witness testimony, the ALJ erred in not including the limitations provided by this evidence in the hypotheticals presented to the VE. *See, e.g.*, *Embrey*, 849 F.2d at 423 ("Unless the record indicates that the ALJ had specific and legitimate reasons for disbelieving a claimant's testimony as to subjective limitations such as pain, those limitations must be included in the hypothetical in order for the vocational expert's testimony to have any evidentiary value.").

### F. Remedy

Plaintiff asks the Court to apply the "credit-as-true" rule, which would result in a remand of Plaintiff's case for payment of benefits rather than for further proceedings. (Pl. Br. at 20–21.) The credit-as-true rule applies "only in rare circumstances." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1100 (9th Cir. 2014) (internal citations omitted). It applies when three elements are present. *Id.* at 1099–1102. First, the ALJ must

have failed to provide legally sufficient reasons for rejecting medical opinion evidence or claimant testimony. *Id.* at 1100. Second, the record must be fully developed, there must be no outstanding issues that must be resolved before a determination of disability can be made, and the Court must find that further administrative proceedings would not be useful. *Id.* at 1101. Third, if the above elements are met, the Court may "find[] the relevant testimony credible as a matter of law . . . and then determine whether the record, taken as a whole, leaves not the slightest uncertainty as to the outcome of [the] proceeding." *Id.* (internal citations and quotations omitted).

In this case, the ordinary remand rule, not the credit-as-true rule applies. As discussed, the ALJ failed to explain why Plaintiff's spinal impairments did not fulfill Listing 1.04's requirements. *See supra* Part III.A. The Court agrees with Defendant that the record contains contradictory evidence as to whether Listing 1.04 is satisfied. (*See* Def. Br. at 10.) Specifically, the State agency consultants considered Listing 1.04 and found that the Listing was not met (R. at 91, 103), while Dr. Vengurlekar opined that Plaintiff had met Listing 1.04 (R. at 525). When the record contains contradictory opinions, the ALJ, not this Court, must resolve the conflict. *Treichler*, 775 F.3d at 1101. Therefore, because there are outstanding issues that must be resolved before a determination of disability can be made, the Court will remand this matter for further development of the record.

## IV. CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** remanding this matter to the Social Security Administration for further proceedings consistent with this Order. Specifically, the ALJ must properly explain why Plaintiff's spinal impairments do not meet or equal the requirements in Listing 1.04, consider Plaintiff's symptom testimony and lay witness testimony or provide legally sufficient reasons to reject it, and present complete hypotheticals to the VE.

**IT IS FURTHER ORDERED** directing the Clerk to enter judgment accordingly and close this case.

\ \ \

Dated this 21st day of June, 2021.

*Michael T. Liburdi*
Michael T. Liburdi
United States District Judge